**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

**United States of America**,

v.                                                           **No. 1:14-CR-00071**

**Jose L. Castillo-Hercules**,

_____ _Defendant_. _____

SENTENCING MEMORANDUM ON BEHALF OF DEFENDANT
(REDACTED)

Jorge E. Artieda Law Office, P.C.
100 N. Washington Street,
Suite # 222
Virginia 22046
Tel: (703) 388-6055
Fax: (703) 649-6491
jorge@artiedalaw.com

Jorge E. Artieda
_Counsel for Defendant_

TABLE OF CONTENTS

INTRODUCTION..................................................................................................... 3
BACKGROUND ................................................................................................... 3
THE LAW .............................................................................................................4
ARGUMENT.........................................................................................................7

  A.  The History and Characteristics of Mr. Castillo ................................................. 8
     1. Early Life…………………………………………………………………….. 8
       i.   Physical Abuse As A Child and Disadvantaged Background……… 8
     2. Last Ten Years……………………………………………………….…….. 10
       i.   Dedication to His Daughters and Family …………………………. 10
       ii.  Solid Employment History………………………………….……….. 11
       iii. Remorse and Rehabilitation……………………………………….… 12
       iv.  Good Deeds …………………………………………………………. 14
       v.   XXXXXXXX..................................…………………………………. 16
  B.  The Nature and Circumstances of the Offense.................................................. 17
     1. Mr. Castillo's Motive Was Not Venal…………………………………………… 17
  C.  The Need for the Sentence Imposed……………………………………….............. 18
     1. A Sentence Well Below the Guidelines Would Best Satisfy The Goals Of §
       3553(A)………………………………………………………………….… 20
     2. Mr. Castillo Has Been Punished Far Beyond What Is Just…………..…….. 20
     3. Need for Deterrence………………………………………………………….. 21
     4. To Protect The Public From Further Crimes ………………………….…….. 22
     5. Mr. Castillo's Criminal History is Overstated………………………………. 24
     6. Need for Incapacitation…………………………………………………….... 25
  D.  Kinds of Sentences Available.......................................................................... 25
     1. The Need to Avoid Unwarranted Sentence Disparities……………….......... 27
CONCLUSION ...................................................................................................... 28

## TABLE OF AUTHORITIES

Blakely v. Washington, 542 U.S. 296 (2004)........................................................  5

Gall v United States, 552 U.S. 38 (2007)...............................................  5, 25, 26

Kimbrough v. United States. 128 S.Ct. 558, 564 (2007)................................  25

Pepper v. United States  131 S.Ct. 1229 (2011).................................  13, 22

Rita v. United States, 551 United States 338, 364-65 (2007).................................  10, 26

Santosky v. Kramer, 455 U.S. 745, 789 (1982)................................................  9

Tapia v. United States, 131 S. Ct. 2382, 2387 (2011)........................................  19

United States v. Adelson, 441 F.Supp.2d 506  (SDNY 2006 )......................................  16

United States v. Baker, 502 F.3d 465 (6th Cir. 2007)....................................  24

United States v. Beiermann, 599 F. Supp. 2d 1087, 1103-04 (N.D. Iowa 2009).... 21-22

United States v. Bernal-Aveja, 414 F.3d 625 (6th Cir. 2005)......................................  18

United States v. Booker, 543 U.S. 220 (2005)............................................  4, 19

United States v. Bryson, 163 F.3d 742 (2d Cr. 1998)....................................  14

United States v. Camejo, 333 F.3d 669 (6th Cir. 2003)................................  21

United States v. Clay, 483 F.3d 739 (11th Cir. 2007)........................................  13

United States  v. Deigert, 916 F.2d 916, 918-19 (4th Cir. 1990)................................ 9-10

United States v. Deshon, 183 F.3d 888 (8th Cir. 1999)................................  13

United States v. Fernandez, 443 F.3d 19 (2d Cir. 2006)................................  17

United States v Fuson, 215 Fed. Appx. 468 (6th Cir. Feb. 8, 2007)............................  23

United States v. Galvez-Barrios , 355 F.Supp.2d 958 (E.D.Wis.,2005)......................  18

United States v. Hein 463 F.Supp.2d 940 (E.D. Wisc. 2006)......................................  23

United States v. Howe, 543 F.3d 128 (3d Cir. 2008)..............................................  11

United States v. Husein 478 F.3d 318 (6th Cir. 2007)..............................................  15

United States v. Jeffery, 631 F.3d 669 (4th Cir. 2011)..............................................  7

United States v. Jones 460 F.3d 191 (2nd Cir. 2006)..............................................  27

United States v. Jones, 158 F.3d 492 (10th Cir. 1998)..............................................  12

United States v. Knox  573 F.3d 441  (7th Cir. 2009)..............................................  16

United States  v. Lopez, 938 F.2d 1293 (D.C. Cir. 1991)..............................................  10

United States v. Mahan  232 Fed. Appx. 796 (10th Cir. 2007) (Unpub.)...................  18

United States v. Massey, 663 F.3d 852 (6th Cir. 2011)..............................................  16

United States v. Milne 384 F.Supp.2d 1309 (E.D.Wis. 2005)..............................................  18

United States v. Navarro-Diaz, 420 F.3d 581 (6th Cir. 2005).....................................  21

United States v. Parella, 273 F.Supp. 2d 161 (D. Mass. 2003)......................................  14

United States v. Pauley, 511 F.3d 468 (4th Cir.  2007)..............................................  11, 13

United States v Ranum, 353 F. Supp. 2d 984 (E.D. Wis. 2005)..................................  18

United States v. Ruff, 535 F.3d 999 (9th Cir. 2008)..............................................  12

United States v. Santoya, 493 F.Supp.2d 1075 (E.D. Wisc. 2007)...............................  14

United States v. Szanto, 2007 U.S. Dist. LEXIS 83765 (N.D. Ill. Nov. 8, 2007)........  18

United States v Thurston, 544 F.3d 22 (1st Cir. 2008)..............................................  15

United States v. Tomko 562 F.3d 558 (3d Cir. 2009)..............................................  15

United States v. Wachowiak, 496 F.3d 744 (7th Cir. 2007).......................................  15

United States v. Whitehead, 532 F.3d 991 (9th Cir. 2008)..........................................  11

United States v. Workman, 80 F.3d 688 (2d Cir. 1996)..............................................  14

United States v. Zolp, 479 F.3rd 715 (9th Cir. 2007)........................................................ 17

United States  v. Walter, 256 F.3d 891 (9th Cir. 2001)................................................... 9

Wisconsin v. Mitchell, 508 U.S. 476 (1993).................................................................... 17

**STATUTES AND REGULATIONS**

18 USC. § 3553(A)(1)......................................................................................................... 10

18 USC. § 3553(A)(2)......................................................................................................... 19

18 USC. § 3582................................................................................................................... 20

**LEGISLATIVE**

S. Rep. No. 98-225 at 76 (1983).................................................................................... 23

**OTHER AUTHORITIES**

U.S. Dep't of Health and Human Services, Administration for Children
and Families, *Understanding the Effects of Maltreatment on Brain  Development*
(2009)................................................................................................................................. 9

National Institute of Health, National Institute of Mental Health, *The Teen Brain:
Still Under Construction* (NIH Publication No. 11-4929 2011) ................................. 9

Richard S. Frase, *Excessive Prison Sentences, Punishment Goals, and the Eighth
Amendment: "Proportionality" Relative to What?...* 89 Minn. l. Rev. 571,590
(February 2005)............................................................................................................... 20

Valerie Write,  Ph.D., *Deterrence in Criminal Justice, Evaluating Certainty vs.
Severity of Punishment* at 6 (November 2010) (explaining that the bulk of research
on the deterrence effects of harsher sentences fails to support the assertion that
tougher sentences deters crime)................................................................................... 21

Andrew von Hirsch, et al, *Criminal Deterrence and Sentence Severity: An Analysis
of Recent Research* (1999)............................................................................................. 22

USSC, *Measuring Recidivism* at 15
(2004)........................................................................................................ 22

Francis T. Cullen *et al. Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science,* 91 Prison J. 485, 505-515 (2011)......................................................... 22

USSC, *Measuring Recidivism,* at 15-16 (2004)......................................................... 24

USSC, *A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score,* at 5 (2005)...... 25

Paul J. Hofer, *Immediate and Long-Term Effects of United States v. Booker,* 38 Ariz.St.L.J. 435, 442 (2006)......................................................................... 27

USSC, Annual Report, *Sentence Length of Offenders Sentenced Under Immigration Guidelines,* Table 50 (2012)............................................................. 27

## TABLE OF EXHIBITS

Exhibit A –     Declaration from Defendant, Jose L. Castillo Hercules…………………………….. 30

Exhibit B –     Birth Certificate of Defendant's Daughters, Sofia and Arianna ……………… 47

Exhibit C –     Letter to the Court from Children's Social Worker, Alexandra Frerotte………. 50

Exhibit D –  Letter to the Court from Attorney Marc Harrold……………………………... 53

Exhibit E –  Letter to the Court from XXXXXXXXXXXX…………………………………… 58

Exhibit F –  Declaration from Defendant's Mother, Maria de Jesus Hercules……………… 61

Exhibit G –   Declaration from Defendant's Spouse, Cynthia Pena…………………………. 65

Exhibit H –  Declaration from Defendant's Sisters, Sonia and Maria……………………….. 68

Exhibit I –  Declaration of Defendant's Grandfather, Francisco Hercules…………………. 72

Exhibit J –  Declaration of Support from Employer and Co-Worker, Better Lawn Services… 80

Exhibit K –  Declaration of Support from Defendant's Mother-in-Law, Maria Pena……….. 83

Exhibit L –  Declaration of Support from Defendant's Nephew, Marvin Castillo………….. 85

Exhibit M –  Declarations of Support from Defendant's Family and Friends………………. 87

Exhibit N - Mortgage Loan Statement……………………………………….....………………….. 102

















INTRODUCTION

Mr. Castillo pleaded guilty to an illegal reentry after a felony conviction. His plea provides for an advisory sentencing guideline range of 8-14 months. Mr. Castillo respectfully requests a non-jail because the seriousness of his offense is substantially mitigated by the decade that has passed since his last arrest, his discipline and solid work history, his devotion to family, and his good deeds. Mr. Castillo respectfully submits to this Court that his life and actions for the last decade show his extraordinarily transformation and low risk of recidivism.

BACKGROUND[1]

Mr. Castillo looks the type—shaved head, piercing eyes, built, with tattoos all over. Yep. A gang member—he must be the embodiment of evil. No redemption. But one must take a closer look. If it were not for the external marks that society has learned to link with the worst features a disadvantaged background could yield, Mr. Castillo would an awesome neighbor, the person one would not mind leaving one's kid or grandkid to babysit.

Most of the details about Mr. Castillo's life for purposes of this memorandum are being submitted as Exhibits in support of this memorandum in the form of affidavits, letters of support, and references. But the most salient aspects of his background could be summarized in the following:

Despite the extreme abuse and disadvantages that Mr. Castillo suffered as a kid, witnessing the savage beatings his father used to inflict on his mother, he has managed to

---

[1] Based on Mr. Castillo's Declaration and the supporting documents submitted with the memorandum.

3

become a well-adjusted adult, a devoted family man, a solid neighbor.

Setting aside his gang participation over 10 years ago, Mr. Castillo's life has been exemplary. Just by looking at him, it is hard to believe that he has worked since he was a teenager and has never stopped working even after entering the United States in 1998 and again in 2005. That he is such a responsible worked that his boss wants him back. That he was an alcoholic since age 15 and gave it up completely for his daughters. That he is the one who is the most involved in his girls' lives—changing diapers, feeding them baby food, preparing dinner for them, getting them ready for school every morning. If it were not for his external look and his tattoos, one would not believe that he likes to help complete strangers in times of trouble and asks absolutely nothing in return. That his mother-in-law, who once despised him, now adores him. That he serves as a role model for his young nephew whose dad decided to abandon him.

Mr. Castillo is a transformed man (his transformation almost religious in nature after the birth of his daughters) and has behaved that way for the last decade. The affidavit and letters in support show that Mr. Castillo is the type of person that society would benefit from having among them. For a person with his discipline and character and heart, to keep him detained serves no purpose.

## THE LAW

In <u>United States v Booker</u>, 543 U.S. 220 (2005), the United States Supreme Court found those provisions of the Federal Sentencing Reform Act of 1984 that make the guidelines mandatory, or which rely upon the Guidelines' mandatory nature,

4

incompatible with its Sixth Amendment holding in <u>Blakely v Washington</u>, 542 U.S. 296 (2004). Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory. "Therefore, instead of being bound by mandatory sentencing guidelines, <u>Booker</u> merely required a sentencing judge to first consider the guideline range and then impose a reasonable sentence pursuant to 18 U.S.C. §3553(a).

The sentencing guidelines were again discussed by the Court in <u>Gall v United States</u>, 552 U.S. 38 (2007). In Gall, the Court set forth a number of important principles. First, the Court made clear that the sentencing guidelines are merely advisory and that appellate review is limited to the issue of "reasonableness:

> As a result of our decision [in Booker], the Guidelines are now advisory, and appellate review of sentencing decisions is limited to determining whether they are "reasonable." Our explanation of "reasonableness" review in the Booker opinion made it lucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions. Id.

Second, it is equally clear that the sentencing judge must explain his or her reasons for departing from the guidelines:

> It is also clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications.  Id.

Third, the opinion placed certain restrictions on the extent of appellate review of a sentence outside the advisory guideline range, and specifically disapproved of certain criteria that had been utilized since <u>Booker</u>:

> In reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may therefore take the degree of variance into account and consider the extent of a deviation from the

> Guidelines. We reject, however, an appellate rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range. We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence.

Fourth, while the Court had permitted the circuit courts to adopt a presumption of reasonableness for sentences within the guideline range, it did not follow that those courts could adopt a presumption of unreasonableness for sentences outside the range:

> As an initial matter, the approaches we reject come too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines range.....Even the Government has acknowledged that such a presumption would not be consistent with Booker.

Finally, the Court gave its reasons for its rejection of the "mathematical approach:"

> The mathematical approach also suffers from infirmities of application. On one side of the equation, deviations from the Guidelines range will always appear more extreme – in percentage terms -- when the range itself is low, and a sentence of probation will always be a 100% departure regardless of whether the Guidelines range is 1 month or 100 years. Moreover, quantifying the variance as a certain percentage of the maximum, minimum, or median prison sentence recommended by the Guidelines gives no weight to the "substantial restriction of freedom" involved in a term of supervised release or probation.

> Most importantly, both the exceptional circumstances requirement and the rigid mathematical formulation reflect a practice -- common among courts that have adopted "proportional review" -- of applying a heightened standard of review to sentences outside the Guidelines range. This is inconsistent with the rule that the abuse- of-discretion standard of review applies to appellate review of all sentencing decisions -- whether inside or outside the Guidelines range.

With Gall, the Supreme Court laid to rest any argument whatsoever that trial judges are required to impose sentences within the sentencing guideline range. Sentencing guidelines are merely advisory. Courts are to impose reasonable sentences

consistent with the principles set forth in the sentencing statute.  Judges "have extremely broad discretion when determining the weight to be given each of the § 3553(a) factors." United States v. Jeffery, 631 F.3d 669, 679 (4th Cir. 2011).

The federal sentencing statute requires a "sentence sufficient, but not greater than necessary" to meet certain goals, including consideration of "(1) the nature and circumstances of the offense and  the history and characteristics of the defendant; (2) the need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant;  (3) the kinds of sentences available;  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

<u>ARGUMENT</u>

If the best predictor of future behavior is past behavior, this Honorable Court can rest assured that it will not hear from Mr. Castillo again.  Since his return to the United States approximately 10 years ago, Mr. Castillo's life had been humdrum but fulfilling— working at landscaping, going straight back home from work, staying with family, changing diapers, feeding his daughters, taking them to the doctor, helping them with school, making sure his girls were ready for school, watching movies at home with them during the weekend, paying the mortgage. Mr. Castillo had been an alcoholic since age 15, but he gave it up cold turkey years ago for his daughters.  That is the real Mr. Castillo, the one behind the gang tattoos, the one behind closed doors.

7

This assurance that Mr. Castillo will not be a matter of concern to the justice system can be found not in Mr. Castillo's words, but his actions.  His history and characteristics counsel heavily against a jail sentence. It may sound counterintuitive—after all, Mr. Castillo was affiliated with a gang over a decade ago, almost as a teenager. But he renounced it to the point that his life is in danger.  Mr. Castillo is a transformed man. For the last ten years he has lived a productive life, serving as a role model for his daughters and other family members. His II points of criminal history correspond to a past long gone; unlike other individuals who tend to commit crimes periodically, Mr. Castillo has not been in trouble for over ten years. So if past is prelude, this Court and society has nothing to worry about. If anything, Mr. Castillo is the type of human being society needs more.

### A.  THE HISTORY AND CHARACTERISTICS OF MR. CASTILLO

1.  <u>Early Life</u>

  i.  *Mr. Castillo Suffered Extraordinary Physical Abuse As Child and Had a Disadvantaged Background*

As Mr. Castillo indicates in his Declaration (Exh. A) when was a kid, he had it bad. Not only was his family poor, but every weekend he would hide and watch from a closet how his alcoholic father savagely beat his mother. When his mother was forced to leave home to escape the violence and to find better job opportunities in the United States, Mr. Castillo and his sisters lived with aunt Romelia, a former *guerrillera* with serious problems of her own.  She would beat Mr. Castillo when he was a child and for many years. When Mr. Castillo moved away to live with another aunt, Teresa, she would force

him to work—the aunt did not consider school important. On top of it, with no parental supervision, Mr. Castillo was introduced to alcohol at an early age, becoming an alcoholic as a result. Such abuse and neglect has been recognized as a factor for Courts to use when sentencing. And although Mr. Castillo does not blame his reentry without permission into the United States on the beatings or alcoholism, his early abuse is certainly is one of many factors to be considered. See Santosky v. Kramer, 455 U.S. 745, 789 (1982) (Rehnquist, J., joined by Burger, C.J., White, and O'Connor, J., dissenting) ("It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens"); see also United States v. Walter, 256 F.3d 891 (9th Cir. 2001)(where defendant sent threat to the president, district court could downward depart from 41 months sentence because combination of brutal beatings by defendant's father, the introduction to drugs and alcohol at early age constituted the type of extraordinary circumstances justifying consideration of the psychological effects of childhood abuse).

Child abuse, like the type sustained by Mr. Castillo can have negative and long lasting effects.2 3 The court can consider the defendant's troubled upbringing and his exposure to domestic violence as a child.  See United States v. Deigert, 916 F.2d 916, 918-

---

2 U.S. Dep't of Health and Human Services, Administration for Children and Families, *Understanding the Effects of Maltreatment on Brain Development* (2009), available at https://www.childwelfare.gov/pubs/issue_briefs/brain_development/effects.cfm. ("[Young people] often suffer from the cumulative effects of a lifetime of abuse and neglect. [These teens may show delays in school and social skills.  They may be more drawn to taking risks, and they may have more opportunity to experiment with drugs and crime if they live in environments that put them at increased risk of these behaviors.")

3 National Institute of Health, National Institute of Mental Health, *The Teen Brain: Still Under Construction* (NIH Publication No. 11-4929  2011), available at http://www.nimh.nih.gov/health/publications/the-teen-brain-still-under-construction/index.shtml. (Emphasizing that new studies reveal that the human brain does not show adult characteristics until early 20s.)

19 (4th Cir. 1990); see also United States v. Lopez, 938 F.2d 1293, 1297-99 (D.C. Cir. 1991)

(where defendant received 51 months in cocaine case, case remanded for district court to

consider departure because defendant was exposed to domestic violence, among other

factors taken in the totality of the circumstances.)

2.  Last Ten Years

   i.   *Dedication to His Daughters and Family*

Becoming a father for the second time turned to be almost religious experience for

Mr. Castillo. He devoted himself to them fully. He gave up alcohol completely.   It would

be hard to find someone so devoted to his family. Mr. Castillo's devotion to his daughters

and to family life are all factors that the Court should consider in addressing Mr. Castillo's

sentencing. In fact, family circumstances have frequently been the basis for Court to

grant sentences below the applicable Guideline range. See Rita v. United States, 551 U.S.

338, 364-65 (2007) (Stevens, J. and Ginsburg, J., concurring. ("The Commission has not

developed any standards or recommendations that affect sentencing ranges for many

individual characteristics. Matters such as age, education, mental or emotional

condition, medical condition (including drug or alcohol addiction), employment history,

lack of guidance as a youth, family ties, or military, civil, charitable, or public service are

not ordinarily  considered under the Guidelines. . . . These are, however, matters that §

3553(a) authorizes the sentencing judge to consider.  See 18 U.S.C. § 3553(a)(1))."

It is clear from the letters that Mr. Castillo's spouse (Exh. G), mother (Exh. F),

mother-in-law (Exh. K), and sisters wrote (Exh. H), that their bond is significant. His

daughters Sofia and Arianna would continue to be deeply harmed by any absence, as

indicated in the Letter by their Social Worker. (Exh. C.)

Mr. Castillo's exceptionally close relationship with his daughters presents a mitigating factor for the court, warranting a sentence well below the guidelines.  In fact, different Courts have considered different characteristics, similar to the ones shown by Mr. Castillo in granting a downward variance. See  United States v. Pauley, 511 F.3d 468, 474 (4th Cir.  2007) (where client pled to possession of child porn, and guidelines 78-97 months, court's downward variance to 42 months affirmed in part because defendant "is a good parent" which is a "valid consideration under § 3553(a)"); United States v. Howe, 543 F.3d 128 (3d Cir. 2008) (affirming probation by relying on the District Court's finding of Howe's remorse,  as well as the defendant's devotion to family); United States v. Whitehead, 532 F.3d 991 (9th Cir. 2008)(upholding probation where guidelines range was 41-51 months for creating counterfeit access device where district court had found that defendant was  remorseful, was employed, supported his daughter and no longer posed a threat to  community).

ii.   *Solid Employment History*

Mr. Castillo has worked since he was a teenager. He worked in El Salvador in a Papusa stand and with his grandfather in a farm. He worked when he arrived to the United States to help his mother bring the rest of the family. He worked with his grandfather after he was deported (Exh. I). He continued to work when he reentered without permission. Mr. Castillo's mother taught him to be proud and never ask for handouts, to work and be responsible, that he has to be resourceful. (Exh. F) And resourceful he was—even during the financial catastrophe he did not sit down and

complained, he got to work. His employer, Better Lawn Services, wants him back. (Exh. J) The court should consider this solid work history, in the totality of the circumstances, as one factor among many that in the aggregate calls for a sentence below the guidelines. See United States v. Ruff, 535 F.3d 999 (9th Cir. 2008) (where defendant pled guilty to embezzling 650,000 from non-profit organization over course of three years, and where guidelines 30-37 months, sentence of one day in jail and supervised release for three years on condition that defendant spend one year in community treatment center to go to work and obtain counseling—not unreasonable in part because of defendant's "history of strong employment"); see United States v. Jones, 158 F.3d 492, 498 (10th Cir. 1998) (where defendant pled guilty to possession of a firearm by a prohibited person, the district court did not abuse its discretion in departing downward by three levels when, as one of eleven factors, it considered the defendant's "long impressive work history ...where good jobs are scarce.")

   iii.    Mr. Castillo's Remorse And Rehabilitation

There is no doubt that Mr. Castillo has shown remorse, not just for his reentry, but more important for his affiliation with a gang ten years ago. He has expressed his remorse through the acceptance of responsibility statement, but more convincing, he has shown his remorse by living a wholesome life for the last ten years. His conversion to become a devoted father and a Good Samaritan was religious in nature. He did not sign up for any Church, but he had an epiphany that transformed him and his way of looking at life and at others. Actions speak louder than words and remorse and rehabilitation have been considered by courts when sentencing below the guidelines. See Pepper v. United States

131 S.Ct. 1229, 1247 (2011) (essentially abrogating USSG §5K2.19 which prohibited downward departure for "post *sentencing* rehabilitative efforts, even if exceptional" on grounds that the policy statement "rests on wholly unconvincing policy rationales not reflected in the sentencing statutes Congress enacted.");  see United States v. Pauley, 511 F.3d 468 (4th Cir. 2007) (where client pled to possession of child porn and guidelines 78-97 months, court's downward variance to 42 months affirmed in part because he was "deeply remorseful" and "appropriate consideration" under the statute as reflects his "history and characteristics"); see United States v. Clay, 483 F.3d 739, 745 (11th Cir. 2007) (where defendant convicted of possession of methamphetamine precursors, and guideline range was 188 to 235 months, downward variance to 60 months was reasonable because of post offense rehabilitation—true religious conversion, drug and rehab program caused defendant to lead "a different life"; and where others said they had overcome their addiction because of defendant's influence—"considerations of post offense rehabilitation are appropriate when a district court evaluates the history and characteristics of the defendant and the need to protect the public from further crimes" "a departure for post offense rehabilitation reflects that, unlike some other defendants, defendant had fundamentally changed since his offense, poses a lesser risk to the community, and does not require incarceration for too long"); see United States  v. DeShon, 183 F.3d 888, 889 (8th Cir. 1999) (where defendant pled to tax evasion etc., District Court did not abuse its discretion in departing downward from 30-37 months to 5 months community confinement without work release based on defendant's post-offense rehabilitation, after witnesses testified that he had "renewed his life in the church" and

was making extraordinary efforts to turn his life around); <u>United States v. Bryson</u>, 163 F.3d 742, 747 (2d Cr. 1998)("This Court has held that a sentencing judge may exercise discretion and depart from the applicable guideline range in light of a defendant's efforts toward rehabilitation, provided those efforts are extraordinary."); <u>United States v. Workman</u>, 80 F.3d 688, 701-702 (2d Cir. 1996) (between defendant' criminal conduct and arrest he left a gang joined the army and was honorably discharged – a modest downward departure proper because defendant abandoned his criminal lifestyle-"[R]ehabilitation efforts by drug-addicted defendants may justify downward departures under appropriate circumstances"); <u>United States v. Perella</u>, 273 F.Supp. 2d 162, 163 (D. Mass. 2003) (where the defendant was convicted of being getaway driver in three bank robberies, court departs from 30-37 months to probation because defendant "totally changed his life and his behavior" and treatment was successful "a rehabilitated defendant is not likely to be a recidivist"); <u>United States v. Santoya</u>, 493 F.Supp.2d 1075, 1079 (E.D. Wisc. 2007) (in cocaine distribution case where defendant career offender and guidelines 188-235months court imposes 138 months in part because defendant "has significant positives in his character and background as evidenced by the letter from his family and fiancé which the guidelines did not take into account and because the judge is "permitted to consider the entirely of the defendant's background and character, not just the negatives reflected in his criminal history").

    *iv.*    *Mr. Castillo's Good Deeds*

    In addition devoting his time to his family, Mr. Castillo has shown to have a generous heart, even with total strangers. (Exh. M) The letters in support show that he

has helped people by giving a ride to a lady when the weather was suffocating, his tenant

down on his luck by giving him a break on the timing of the monthly payment, a recently

minted father in a hospital needing a ride back home.  This is a person who is not

wealthy and lives in fear of his former associates and with limited time devoted to his

family. Yet he still had time to give to complete strangers not money but something

much, much more precious and scarce —his time. This Court should grant a variance

based on the Mr. Castillo's generosity of spirit.  See United States v. Wachowiak, 496 F.3d

744 (7th Cir. 2007) (affirming district court's sentence for defendant in part because

record demonstrated defendant was a kind, caring individual, who enjoyed broad support

of family, friends, as shown by many supportive letters. "... while §3553(a)(1) requires the

courts to consider the character of the defendant, the guidelines account only for

criminal history. In cases where the defendant led an otherwise praiseworthy life, the

court should consider a sentence below the advisory range..."); United States v. Husein

478 F.3d 318, 331 (6th Cir. 2007) (where defendant convicted of  participating in drug

transactions, where guidelines 40 months, sentence of one day in prison and 270 days

home confinement  warranted in part where district judge properly determined that

defendant's family would "benefit more by [defendant's]  presence than society is going

to benefit from [her]  incarceration.");  United States v. Tomko 562 F.3d 558, 571 (3d Cir.

2009) (en banc) (where defendant convicted of tax evasion of $225,000,  and guidelines

12-18 months, court's sentence to probation on condition of one year home detention not

unreasonable in part because of defendants charitable activities and good deeds);

United States v Thurston, 544 F.3d 22, 26 (1st Cir. 2008) (where defendant convicted of

15

medicate fraud over five million dollars and guidelines capped at 60 months, district court's sentence of 3-months affirmed where district judge cited chartable good works, among other things); United States v. Adelson  441 F.Supp.2d 506, 513-514  (SDNY 2006 ) (in securities fraud case, where guidelines call for life sentence, court imposes 42 month sentence in part because of the defendant's past integrity and good deeds, which "were not performed to gain status or enhance his image. Most of them were unknown to all but a few people until the time of his sentencing.").

*v.*     *REDACTED*

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

v. XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

## B. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

Mr. Castillo acknowledges that his actions were improper and ultimately criminal. However, it is important for the Court to understand the context in which these events occurred. As Mr. Castillo explains in his declaration, he was fleeing for his life. (Exh. A).

1.    Mr. Castillo's Motive Was Not Venal

Under § 3553(a) and the decisions of the Supreme Court, a sentencing court may properly consider a defendant's motive. Wisconsin v. Mitchell, 508 U.S. 476, 485 (1993) ("the defendant's motive for committing the offense is one important factor' in determining a defendant's sentence").

It is important to recognize that Mr. Castillo, when he reentered the United States, had no evil motive. Instead, he fled El Salvador to save his life.  Mr. Castillo has indicated that he was not planning to return to the United States.  He was under no illusions and knew his deportation as a former gang member meant pretty much a life-time ban.  Besides, he wanted to keep working with his grandfather, a land and property cattle owner. Mr. Castillo was feeling comfortable, dreaming of getting an education and some day running his grandfather's estate. He could see himself someday the same way he saw his grandfather, a respectable man.

As in indicated in his affidavit, the gangs in El Salvador tried to recruit Mr. Castillo back. They learned about his past and decided he belonged to them for life and that he

had no choice but to "report" for duty. Since he wanted nothing to do with them, they started hunting him down like an animal. His reentered out of desperation.  Motive is a factor to consider when sentencing. <u>See</u> <u>United States v. Szanto,</u> 2007 U.S. Dist. LEXIS 83765 (N.D. Ill. Nov. 8, 2007) (downward variance granted in part on finding that financial hardships were a motivating factor); <u>United States v. Bernal-Aveja</u>, 414 F.3d 625, 628-629 (6th Cir. 2005) (in illegal reentry case where guideline 57-71 months, case remanded because of *Booker* where district court expressed sympathy for defendant who wanted to be near his four U.S.-born children in Ohio and based on his history and character); <u>United States v. Galvez-Barrios</u> , 355 F.Supp.2d 958, 964 (E.D.Wis.,2005) (in illegal reentry case, court grants defendant a 3 level reduction based on his honorable motive for re-entering the United States);  <u>United States v Ranum</u>, 353 F. Supp. 2d 984, 990 (E.D. Wis. 2005) (in fraud case defendant did not act for personal gain or for improper  personal gain of another); <u>United States v. Mahan</u>  232 Fed. Appx. 796 (10th Cir. 2007) (unpub.) ( where defendant convicted of felon in possession, 77-month guideline sentence reversed because district court refused to consider defendant's asserted motive for carrying the shotgun; namely to use as a club to protect himself and his wife after he had just been beaten, which is a relevant  "circumstance" under a *Booker* analysis); <u>United States v. Milne</u> 384 F.Supp.2d 1309, 1312-13 (E.D.Wis.,2005)(in bank fraud case a mitigating factor is that the defendant did not spend the bank's money on luxury items but rather to prop up a failing business. "With their almost singular focus on loss amount, the guidelines sometimes are insufficiently sensitive to personal culpability.").

## C.  THE NEED FOR THE SENTENCE IMPOSED

The factors presented by Mr. Castillo in this brief and the supporting documents provide a solid basis for a non-jail sentence.

The Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)," which are "the need for the sentence imposed-

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

18 U.S.C. § 3553(a)(2).

"These four considerations—retribution, deterrence, incapacitation, and rehabilitation—are the four purposes of sentencing generally." Tapia v. United States, 131 S. Ct. 2382, 2387 (2011). In determining the particular sentence to be imposed, the Court must consider these purposes, the nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid unwarranted disparities, and the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3553(a)(1)-(7); also, Booker, 543 U.S. at 259 (2005). Congress has further provided that

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.*

See 18 U.S.C. § 3582 (emphasis added).  Each of these factors are discussed below.

1.  A Sentence Of Supervised Release Would Best Satisfy The Goals Of § 3553(A)

The need for retribution is measured by the degree of "blameworthiness," which "is generally assessed according to two kinds of elements: the nature and seriousness of the harm caused or threatened by the crime; and the offender's degree of culpability in committing the crime, in particular, his degree of intent *(mens rea),* motives, role in the offense, and mental illness or other diminished capacity."4   The guidelines include none of the factors bearing on Mr. Castillo's degree of culpability.  They do not address his lesser criminal intent as already discussed above and further herein.

2.  Mr. Castillo Has Been Punished Far Beyond What Is Just

Mr. Castillo's prosecution for this offense has had a tremendous impact on him, allowing him to recognize the damage that he has done not only to the United States of America and its laws but also to himself and his family. He has been detained for close to a month with the U.S. Immigration and Customs Enforcement, he has now been detained for months, and even if he is released today he will continue to be detained during the pendency of his immigration proceedings, which could easily last for another 8 months, as made clear by the letter provided by his immigration attorney, Marc Harrold, a former U.S. Immigration and Customs Enforcement prosecutor familiar with the amount of months it takes to adjudicate this type of claims in immigration court. (Exh. D).  See

_____

4 Richard S. Frase, *Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality" Relative to What?...* 89 Minn. l. Rev. 571,590 (February 2005).

20

United States v. Navarro-Diaz, 420 F.3d 581 (6th Cir. 2005) (in illegal reentry case with guidelines 57-71 months, case remanded because of *Booker* where district court noted defendant would be punished more than citizen because not eligible for six months half way house at end of sentence); see also United States v. Camejo, 333 F.3d 669 (6th Cir. 2003) (Where defendant was alien who pled guilty to assault and who remained in INS detention for two years before trial, trial court was empowered to downward depart to give credit to defendant because guidelines do not forbid this factor—case remanded).

Further, Mr. Castillo has lost his job and the ability to contribute to his family and to the mortgage payments.  As a result of his conduct he will have another felony conviction, which will have significant consequences on his future by enormously limiting his employment opportunities. A sentence with no prison time and well below the suggested guideline range in this case will reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. This is especially so in light of the fact that Mr.  Castillo's motives were not entirely egregious, feels remorseful, and the tremendous impact this prosecution has had and will continue to have on him and his children.

3.  Need for Deterrence

Although it is generally assumed that a higher sentence leads to greater deterrence, empirical research does not support that impression—no difference in deterrence was found even between probation and imprisonment.[5]  See also, United States v. Beiermann, 599 F. Supp. 2d 1087, 1103-04 (N.D. Iowa 2009) (holding that a

---

5 Valerie Write,  Ph.D., *Deterrence in Criminal Justice, Evaluating Certainty vs. Severity of Punishment* at 6 (November 2010) (explaining that the bulk of research on the deterrence effects of harsher sentences fails to support the assertion that tougher sentences deters crime).

sentencing decision that has deterrence in mind must be based on empirical data.)

Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University.6  The report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries. It examined the effects of changes to both the *certainty* and the *severity* of punishment. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." The report concludes that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects."

The Commission itself has found that "[t]here is no correlation between recidivism and guidelines' offense level. Whether an offender has a low or high guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected. The guidelines' offense level is not intended or designed to predict recidivism."7  According to "the best available evidence . . . prisons do not reduce recidivism more than noncustodial sanctions."8

  4.  <u>To Protect The Public From Further Crimes</u>

The likelihood that a defendant "will engage in future criminal conduct [is] a central factor  that district courts must assess when imposing sentence." <u>Pepper,</u> 131 S.Ct. at 1242 (2011). This purpose of deterrence has to do with both the defendant's risk of

---

6 Andrew von Hirsch, et al, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999).
7 USSC, *Measuring Recidivism* at 15 (2004)
8 Francis T. Cullen *et al. Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science,* 91 Prison J. 485, 505-515 (2011).

recidivism and the offenders whose criminal histories show repeated serious violations of the law."9  Mr. Castillo has an exceptionally low risk of recidivism.  Aside from this reentry case, Mr. Castillo's record has been unblemished since his 2003. And this discipline and dedication to work and family, to a wholesome life, counts for purposes of sentencing. See United States v. Hein 463 F.Supp.2d 940, 943 (E.D. Wisc. 2006) (where defendant convicted of being felon in possession of ammunition, the guideline term of 12-18 is "greater than necessary to satisfy the purposes of sentencing" in part because "given his minimal prior record and law-abiding life for the past ten years..." See also United States v Fuson, 215 Fed. Appx. 468, 475 (6th Cir. Feb. 8, 2007) (where defendant convicted of felon in possession of firearm and guidelines were 24-60 months, the Court's sentence of probation and 6 months home confinement reasonable in part because defendant's record since prior felony conviction "was unblemished for the past seven years").  Mr. Castillo's record has been unblemished for the past decade. It would be different had Mr. Castillo had been periodically getting into trouble. But that is not the case here.

Further, no period of incarceration is necessary to protect the public from further crimes because there is no reason to believe there will be further crimes of any type, let alone reentry. This is simply because the likelihood that he will not be removed from the United States and stay in this country is extremely high, almost certain. As his immigration attorney's letter indicates, he has a winning case before immigration court. See Exhibit D, Letter from Attorney Marc Harrold, a former ICE prosecutor and

---

9 S. Rep. No. 98-225 at 76 (1983).

immigration law expert. So Mr. Castillo's risk of recidivism is close to non-existent and should count for purposes of sentencing.

In Mr. Castillo's case, incarceration is not necessary to protect the public. After all, he has repudiated gangs and their lifestyle, his record for the last decade is spotless, and his immigration case is solid. By continuing his incarceration, society would be deprived not of a criminal but of a wonderful family man. See United States v. Baker, 502 F.3d 465, 468 (6th Cir. 2007) (where defendant pled guilty to possession of unregistered firearm arising from altercation with wife during which gun accidentally discharged and guideline range 27-33 months, below-guideline sentence of probation with one year house arrest in part because incarceration not necessary to protect the public).

5.  Mr. Castillo's Criminal History is Overstated

The Commission has published studies on recidivism showing that certain aspects of the guidelines overstate the risk of recidivism and that a number of factors that the guidelines prohibit or deem not ordinarily relevant are good predictors of reduced recidivism.10   A Guideline sentence of 8 - 14 months is wholly unnecessary to protect the public from future crimes, especially in light of the fact that the Mr. Castillo's criminal history is low, that he has been in no trouble for a decade, and with his work and strong family history. Mr. Castillo thus poses the lowest possible risk of recidivism, and creates the lowest possible need to protect the public.11

_____

10 USSC, *Measuring Recidivism,* at 15-16 (2004) (Offenders with small prior criminal history have lower recidivism rates)

11 USSC, *A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score,* at 5 (2005)("lower Criminal History Category value predict lower risks of recidivism.")

What is important to keep in mind is that Mr. Castillo's arrest prior to his reentry matter occurred over 10 years ago. The USSC has also considered this fact in pointing out that the recency of a prior offense is important in determining potential recidivism. In short, the more time that passes between the new and the prior offense the less likelihood of recidivism.12

6.  <u>Need for Incapacitation</u>

No period of incarceration is necessary to provide the defendant with the needed education or vocational training, medical care, or other correctional treatment in the most effective manner. Mr. Castillo has shown remorse and that he is rehabilitated, a transformed man.  Any assistance the Court believes Mr. Castillo is in need of can best be offered in a non-jail setting.

**D.  KINDS OF SENTENCES AVAILABLE**

This Court must consider all of "the kinds of sentences available" by statute, § 3553(a)(3), even if the "kinds of sentence . . . established [by] the guidelines" permit or encourage only prison. <u>See</u> <u>Gall</u>, 128 S. Ct. at 602 & n.11.

When sentencing a defendant, the Court "may not presume that the Guidelines range is reasonable." <u>Gall</u>, 128 S.Ct. at 596-597 (2007). Rather, the Court must treat the Guidelines "as one factor among several that § 3553(a) requires the Court to consider. <u>Kimbrough v. United States</u>. 128 S.Ct. 558, 564 (2007).  Once the Court correctly calculates the sentence that the Guidelines recommend, the Court must then make an

---

*Commission Salient Factor Score,* at 5 (2005)("lower Criminal History Category value predict lower risks of recidivism.")

12 *Id*, at 6-7

individualized assessment," considering the remaining factors sets forth in § 3553(a). Gall, 128 S.Ct. at 597. Because the Guidelines merely reflect a "wholesale view –rough[ly] approximat[ing] ... sentences that might achieve §3553(a)'s objectives," Booker and § 3553(a) require the Court to tailor an individualized sentence that actually does achieve § 3553(a)'s objectives in the case before it. Consequently, this Court must "filter the Guidelines' general advice through § 3553(a)'s list of factors." Rita, 127 S.Ct. at 2463, 2465, 2469 (2007); see also Gall, 128 S.Ct. at 598 ("[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue (quoting Koon v. United States, 518 U.S. 81, 113 (1996)).  When the Guidelines' "rough approximation" conflicts with the Court's view of the sentence warranted by other § 3553(a) factors, the Court may disregard the sentencing range recommended by the Guidelines in favor of one that is tailored to the circumstances of the defendant, Rita, 127 S.Ct. at 2463-2464 ("[t]he sentencing courts, applying the Guidelines in individual cases may depart (either pursuant to the Guidelines or, since Booker, by imposing a non-Guidelines sentence)").

Here, regardless of the advisory sentencing guideline range the Court adopts, the remaining § 3553 factors demonstrate that a sentence well below the guidelines would be appropriate. At the end of the day, what would be gained by a prison sentence for Mr. Castillo? And who would benefit?  For one thing, Mr. Castillo has already been punished because he has been detained and will continue to be detained by U.S. Immigration and Customs Enforcement for another 8 months.

Mr. Castillo is a transformed man, not the type that gets into trouble in a periodic basis. Far from it. A non-prison sentence would be more consistent with the facts and circumstances of the case and the interests of justice than sending Mr. Castillo to prison. A non-prison sentence would also satisfy the purposes of 18 USC §3553(a). It would be difficult, for instance, to argue that a sentence below the guidelines did not "reflect the seriousness of the offense" or "provide just punishment for the offense. "Nor could it be said that such a sentence would not "afford adequate deterrence to criminal conduct."

1. <u>The Need to Avoid Unwarranted Sentence Disparities</u>

The Court must consider the need to avoid unwarranted disparities among defendants with similar criminal histories convicted of similar criminal conduct. 18 U.S.C. § 3553(a)(6). "Unwarranted disparity is different treatment that is unrelated to our legitimate sentencing goals, or uniform treatment that fails to take into account differences among offenders that are relevant to our purposes and priorities."[13]

In Mr. Castillo's case, in order to avoid an unwarranted disparity, statistical records indicate that w <u>Booker</u> a big number of defendants who have pleaded guilty to reentry in 2012 have received a below range sentence.[14]

For Mr. Castillo a consideration of the § 3553 factors demonstrates that in this case a sentence well below the guideline is appropriate. <u>U.S. v. Jones</u> 460 F.3d 191, 195 (2nd Cir. 2006) (where defendant convicted of felon in possession and possession of firearm and guidelines were 36 months, district court properly imposed non guideline sentence of 15 months when he considered his own sense of was fair and just. "Although the sentencing

---

13 Paul J. Hofer, *Immediate and Long-Term Effects of United States v. Booker*, 38 Ariz.St.L.J. 435, 442 (2006)
14 USSC, Annual Report, *Sentence Length of Offenders Sentenced Under Immigration Guidelines*, Table 50 (2012)

judge is obliged to consider all of the sentencing factors outlined in section 3553(a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances. That is the historic role of sentencing judges, and it may continue to be exercised, subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness.")

<u>CONCLUSION</u>

Therefore, based upon consideration of the factors set forth in §3553(a), coupled with the statutory directive of §3553(a) that "the court shall impose a sentence, sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. §3553(a)(2), the defense requests that this Court impose a non-jail sentence on Mr. Castillo.

Respectfully submitted,

Jose L. Castillo Hercules

_____/s/_____
By:  Jorge E. Artieda
*Counsel for Defendant*

VA Bar # 82963
Jorge E. Artieda Law Office, P.C.
100 N. Washington Street
Suite # 222
Falls Church, VA 22046
Telephone: (703) 388-6055
Facsimile:  (703) 649-6491
E-Mail:  jorge@artiedalaw.com

CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Jason Scheff, Assistant U.S. Attorney
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the foregoing pleading will be delivered to Chambers within one business day of the electronic filing.

_____/s/_____

Jorge E. Artieda
VA Bar # 82963
*Counsel for Defendant*
Jorge E. Artieda Law Office, P.C.
100 N. Washington Street, Suite
# 222 Virginia 22046
Telephone:  (703) 388-6055
Facsimile:  (703) 649-6491
E-Mail:    jorge@artiedalaw.com